The decision below is signed as a decision of the court.

Signed: September 10, 2007.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| PHOENIX ENTERPRISES, LLC, | ) | Case No. 07-00149 |
| | ) | (Chapter 11) |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| PHOENIX ENTERPRISES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adversary Proceeding No. |
| SHIRLEY HIGHWAY DISTRIBUTION CENTER, LLC, | ) | 07-10011 |
| | ) | |
| | ) | **[Not for Publication in** |
| Defendant. | ) | **West Bankruptcy Reporter.]** |

MEMORANDUM DECISION REGARDING DEFENDANT'S MOTION TO DISMISS

Shirley Highway Distribution Center, LLC ("Shirley"), the defendant in this adversary proceeding, moves to dismiss the complaint filed by plaintiff Phoenix Enterprises, LLC ("Phoenix"), Shirley's former tenant and a debtor-in-possession in this case, pursuant to Fed. R. Civ. P. 12(b)(6) (as incorporated by Fed. R. Bankr. P. 7012). For the reasons that follow, the court will grant Shirley's motion and dismiss

Phoenix's complaint.[1]

I

The following facts are assumed to be true for purposes of this motion.[2] On October 21, 2005, Phoenix and Shirley executed a lease agreement whereby Phoenix would lease 61,500 square feet of property located at 5650 General Washington Drive, Alexandria, Virginia, 22312-2415. (Lease § 6.) The Lease provided that Shirley would deliver the premises once it had "substantially completed" various construction obligations designated as "Landlord's Work." (Lease § 3.1.)[3] The Lease required that Shirley use "commercially reasonable" efforts to complete the

---

[1] The court considered the following documents in preparing this memorandum decision: the plaintiff's complaint (D.E. No. 1, filed March 29, 2007), as well as Exhibit 1 (the "Lease"), Exhibit 2 (the "Amended Lease"), and Exhibit 3 thereto; the Defendant's Fed. R. Bankr. P. 7012(b) Motion to Dismiss Complaint (D.E. No. 6, filed April 30, 2007) and Defendant's Memorandum of Law in Support of Rule 7012(b) Motion to Dismiss (D.E. No. 8, filed April 30, 2007) ("Def. Mem."); the Debtor's Brief in Opposition to Defendant's Motion to Dismiss (D.E. No. 11, filed May 11, 2007) ("Pl. Opp'n"); and Defendant's Response to Plaintiff's Opposition to Defendant's Motion to Dismiss (D.E. No. 12, filed May 16, 2007) ("Def. Reply").

[2] "In considering a motion to dismiss [under Rule 12(b)(6)], the claims must be construed in the light most favorable to the non-moving party and its allegations taken as true." Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969).

[3] The phrase "substantially complete[]" is not defined in the Lease; however, it is defined in the Amended Lease as completion of all Landlord's Work "except for 'punch-list' items that do not affect the use of such improvements for their intended purpose and do not impair Tenant's full possession of the Premises." (Amended Lease ¶ 1.)

Landlord's Work, and then deliver the premises no later than January 1, 2006.  (Lease § 2.5.)  Shirley did not deliver possession by January 1, 2006, forcing the parties to enter into the Amended Lease on May 26, 2006.  (Compl. ¶¶ 10-11.)  The Amended Lease states that "Landlord estimates that Landlord's Work shall be substantially complete on or before June 30, 2006, <u>but Landlord shall have no liability if such work is not complete by such date</u>."  (Amended Lease ¶ 1 (emphasis added).)  In addition to this "no damages for delay" clause, the Amended Lease also contains a clause estopping Phoenix from asserting any claims for breach of contract that allegedly occurred prior to the signing of the Amended Lease (the "Estoppel Clause").  (Amended Lease ¶ 8.)[4]

Shirley did not deliver the premises until December 18, 2006--almost six months after its anticipated completion date.  (Compl. ¶ 15; Ex. 3.)  This caused Phoenix to, <u>inter alia</u>, lose the deposits it had paid to construction vendors to modify the property to fit Phoenix's needs.  (Compl. ¶ 20.)  Phoenix also lost potential profits that its alterations would have generated.

---

[4] Paragraph 8 of the Amended Lease provides that "Tenant hereby acknowledges that Landlord is not in default under the Lease as of [May 26, 2006], and that it is unaware of any condition or circumstance which but for the passage of time or delivery of notice, or both, would constitute a default by Landlord under the Lease.  Tenant has no claims, defenses or set-offs of any kind to the performance of Tenant's obligations under the lease."

(Compl. ¶ 20.)

Phoenix filed its petition for chapter 11 relief on March 22, 2007 (D.E. No. 1).  Just seven days later, Phoenix initiated this adversary proceeding by filing its complaint.  On April 9, 2007, Shirley filed a proof of claim in the total amount of $619,961.79 (Claim No. 2).  Shirley subsequently amended its claim, asserting that it was actually owed $1,257,553.13.  Shirley responded to Phoenix's complaint by filing its motion to dismiss on April 30, 2007.

II

Before turning to the merits of Shirley's motion, the court must first consider the basis for and scope of its jurisdiction in this proceeding.  "Federal courts are courts of limited jurisdiction.  They possess only the power authorized by Constitution and statute."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  "[T]he determination of whether a bankruptcy court has jurisdiction over a matter involves a two-part analysis: [f]irst, [whether] federal jurisdiction over the bankruptcy case or proceeding [] exist[s] pursuant to 28 U.S.C. § 1334," In re U.S. Office Products Co. Sec. Litig., 313 B.R. 73, 79 (D.D.C. 2004), and "[s]econd, whether a bankruptcy court rather than a district court can adjudicate a matter [] pursuant to 28 U.S.C. § 157."  Id.

There is no question that the outcome of this proceeding

"'could conceivably have any effect on the estate being administered in bankruptcy,'" Premium of Am., LLC v. Sanchez (In re Premium Escrow Services, Inc.), 342 B.R. 390, 396 (Bankr. D.D.C. 2006) (quoting In re U.S. Office Products Co. Sec. Litig., 313 B.R. at 80) (internal quotation omitted), thereby bringing this action within the ambit of § 1334(b). Id. The sole question is whether the court is authorized to enter a final judgment in this proceeding pursuant to 28 U.S.C. § 157 and Article III of the Constitution. Phoenix asserts that the court has such authority, (Compl. ¶ 1); Shirley contends that it does not. (Def. Mem. 1 n.2.)

Ordinarily, a matter that falls within a bankruptcy court's jurisdiction only because it is "related to" the debtor's case

(as is the case here)[5] "means that it must also be a non-core proceeding for purposes of § 157." Id. at 407. As this court explained in Premium Escrow Services:

> The statutory distinction drawn between core and non-core proceedings in § 157 is the product of the Supreme Court's ruling in Northern Pipeline Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("Marathon"), where the Court held that the broad grant of jurisdiction extended to bankruptcy courts in the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598 (1979), violated Article III, § 1 of the Constitution. See id. at 87, 102 S.Ct. 2858. The Court concluded that Congress could not confer "'the essential attributes of the judicial power' from the Art[icle] III district court[s]" to federal bankruptcy courts, which are created under Article I of the Constitution. Id. The Court distinguished "state-created private rights," which require Article III adjudication, from "public rights" that "arise

---

[5] "Section 1334 confers two types of jurisdiction: (1) 'original and exclusive jurisdiction of all cases under title 11,' 11 U.S.C. § 1334(a); and (2) 'original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.'" In re Premium Escrow Services, Inc., 342 B.R. at 396 (quoting 28 U.S.C. § 1334). "'The first category [of jurisdiction] refers to the bankruptcy petition itself.'" Id. (quoting U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.), 301 F.3d 296, 303-04 (5th Cir. 2002)). "'A claim "arises under" title 11 [for purposes of § 1334(b)] if the claim is made pursuant to a provision of title 11,'" id. (quoting In re U.S. Office Products Co. Sec. Litig., 313 B.R. at 79), while "'[c]laims "arising in" a case under title 11 are limited to administrative matters that arising only in bankruptcy cases and have no existence outside of the bankruptcy proceeding.'" Id. (quoting In re U.S. Office Products Co. Sec. Litig., 313 B.R. at 79) (internal quotation omitted). Phoenix's suit is for breach of contract--a cause of action in no way unique to the bankruptcy process. The court only has jurisdiction over this case because the matter "relate[s] to" the debtor's case.

6

> 'between the government and others,'" which do not. Id. at 67-72, 102 S.Ct. 2858.
>
> In response to Marathon, Congress amended the Bankruptcy Code to provide that bankruptcy courts could enter final judgments in "core" proceedings that involved public rights, 28 U.S.C. § 157(b), but that bankruptcy courts could only hear and enter recommended findings of fact and conclusions of law with respect to private law, "non-core" matters. Id. at § 157(c)(1). As a matter subject only to a court's "related to" jurisdiction under § 1334 by definition does not involve public rights created by Congress (if that were the case, the matter would fall within the court's "arising under" or "arising in" jurisdiction), such a matter must be non-core as well.

Id. at 407 n.20.

The court's reasoning in Premium Escrow Services is as valid now as it was then, but it does not apply to the instant situation because Shirley has filed a proof of claim for unpaid rent, interest, and late fees allegedly owed to it by virtue of the Amended Lease. In so doing, Shirley has "trigger[ed] the process of 'allowance and disallowance of claims,' thereby subjecting [it]self to the bankruptcy court's equitable jurisdiction." Langenkamp v. Culp, 498 U.S. 42, 44 (1990). In other words, the court can enter a final judgment in this case, not because an action for breach of contract is a "core" proceeding in the abstract, but because Shirley's actions turned this particular breach of contract action into one.

III

The parties devote the bulk of their respective briefs to arguments concerning which provision of the Lease or Amended Lease governs this dispute and whether the "no damages for delay" clause in the Amended Lease can be enforced if Shirley acted in a grossly negligent manner.  (Def. Mem. 5-11; Pl. Opp'n 5-9; Def. Reply 3-8.)  They need not have bothered.  Even if one assumes that Phoenix is correct that it need only plead gross negligence on the part of Shirley to proceed on its claim for breach for contract,[6] its complaint is still fatally defective because the facts pled in the complaint do not remotely support a finding of gross negligence.

"A Rule 12(b)(6) motion is intended to test the legal sufficiency of the complaint."  Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1040 (D.C. Cir. 2003).  To survive such a motion, "a complaint need only set forth 'a short and plain statement of the claim,' Fed. R. Civ. P. 8(a)(2), giving the defendant fair notice of the claim and the grounds upon which it rests."  Id. at 1040.  "However, the court need not accept

---

[6] Shirley attempts to evade the apparent bar imposed by the "no damages for delay" clause in the Amended Lease by arguing that the general limitation of liability provision in the original Lease governs this action, (Pl. Opp'n 5-9), and that a "no damages for delay" clause cannot bar recovery for delay damages caused by a party's gross negligence.  (Pl. Opp'n 5-6.) Either way, the minimum showing of scienter necessary for Phoenix to surmount the restrictions on contractual liability imposed by the Lease and the Amended Lease is gross negligence.

8

inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Moreover, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

Reading the complaint and its exhibits together, Phoenix alleges at best the following pertinent facts: (1) the parties entered into the Lease and then the Amended Lease, under which rent would commence when the "Landlord's Work" was "substantially complete," (Amended Lease ¶ 1); (2) Shirley "estimate[d]" that its "Work" would be "substantially complete on or before June 30, 2006," (Amended Lease ¶ 1); (3) Phoenix could not occupy the property until December 18, 2006, (Compl. ¶ 15, Ex. 3); and Phoenix attempted "to do the construction work as cheaply as possible . . . ." (Compl. ¶ 16.)[7] This conduct does not demonstrate an "indifference to others" or a "disregard[] [for] prudence to the level that the safety of others is completely

---

[7] Phoenix attempts to supplement its factual allegations in its opposition to Shirley's motion to dismiss. (Pl. Opp'n 8.) Unfortunately for Phoenix, "the court must limit its inquiry to the four corners of the [c]omplaint itself, as well as any documents incorporated by reference in the [c]omplaint or facts subject to judicial notice." Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp. I), 333 B.R. 506, 523 (Bankr. D.D.C. 2005).

neglected," as Virginia courts require for gross negligence to be found. Harris v. Harman, 486 S.E.2d 99, 101 (Va. 1997).[8] Indeed, Phoenix does not allege that Shirley's desire "to do the construction work as cheaply as possible" affected the quality of the work at all; rather, Phoenix asserts that this desire caused a six-month delay in the onset of its tenancy. A six-month delay in the completion of construction work is doubtless frustrating, and may not be "commercially reasonable," (Compl. ¶ 16), but it is hardly the sort of thing that "shocks fairminded people." Harris, 486 S.E.2d at 101 (citing Griffin v. Shively, 315 S.E.2d 210, 212-13 (Va. 1984)).

At the very least, Phoenix must plead facts suggesting that Shirley acted in a manner outrageous enough to warrant a finding of gross negligence if it wishes to succeed in its breach of contract action. Bell Atl. Corp., 127 S. Ct. at 1966 n.5. "[A] bare assertion of [gross negligence] will not suffice." Id. at 1966. Regardless of which provision in the Lease or Amended Lease controls in this case, or whether the "no damages for delay" clause in the Amended Lease can be applied where the

---

[8] Harris defined gross negligence in the context of tort law, but the court has no reason to think that these definitions would differ where contracts are concerned. See Stuart Title Guar. Co. v. Linowes and Blocher, 42 F.3d 1386, 1994 WL 689122, *3 (4th Cir. Dec. 12, 1994) (applying Virginia law) (unpublished opinion) (employing definition of "gross negligence" identical to that in Harris in determining applicability of exculpatory provision in contract).

breaching party acts in a grossly negligent manner, the complaint as it is currently written does not state a claim for which relief could be granted.

IV

For the foregoing reasons, the court will enter an order granting Shirley's motion and dismissing Phoenix's complaint. The court will grant Phoenix a brief respite in which to decide whether to renew its efforts by filing an amended complaint, but Phoenix will need to file a motion for leave to amend its complaint if it wishes to persevere in this case because the court is not convinced that Phoenix will be able to plead facts that would permit the court to conclude that Shirley's conduct was grossly negligent.

An order follows.

[Signed and dated above.]

Copies to: All counsel of record.